UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LILLIAN GREEN, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:10-cv-1614-JMS-DKL |
| | ) | |
| ELI LILLY & COMPANY, | ) | |
| *Defendant.* | ) | |

## ORDER

Presently pending before the Court is Defendant Eli Lilly & Company's ("Lilly") Motion for Summary Judgment.  [Dkt. 56.]  Plaintiff Lillian Green abandoned various claims during the briefing on Lilly's motion;[1] therefore, her only remaining claims are for disparate starting pay, disparate raises stemming from Lilly's failure to give her a merit pay increase for 2006 performance, and hostile work environment.   For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Lilly's motion.

## I.
### FACTUAL BACKGROUND

The Court will only address the facts related to Ms. Green's remaining causes of action: that Lilly hired her at a discriminatory pay rate, unlawfully denied her a merit pay increase for 2006 based on her race, and maintained a hostile work environment.  The following facts are not in dispute.

Ms. Green, who is African American, began working for Lilly in 2001 as an Administrative Assistant in its Pharmaceutical Project Management Department.  [Dkt. 57 at 2.]  During the

---

[1] In her response to Lilly's Motion for Summary Judgment, Ms. Green has abandoned her in-line promotion claims and retaliatory discharge claims. [Dkt. 64 at 1.] Summary judgment in Lilly's favor will therefore issue to any claim for discrimination in promotion or related to Ms. Green's termination from Lilly.

relevant time period, Lilly based its pay increases "on, among other things, performance relative to group and individual objectives, performance behaviors and position in salary range." [*Id.* at 4.] After receiving consistent merit pay increases for her performance during the years 2002-2005, Ms. Green was denied a merit pay increase in 2007 for her 2006 performance. [*Id.*] Lilly maintains that the denial was due to unsatisfactory performance, as recorded in performance reviews by Ms. Green's supervisor Alice Susemichel. [*Id.* at 7-9.] Ms. Susemichel rated Ms. Green's overall performance for 2006 as "low successful." [*Id.* at 9.] That same year, Ms. Green's colleague Ms. O'Connor, who was also supervised by Ms. Susemichel and received similar specific criticism, was granted a merit pay increase. [Dkt. 64 at 27.]

In December 2006, Ms. Green called Lilly's Compliance Hotline alleging unfair treatment based on race. [Dkt. 57 at 9.] The next month, Ms. Green met with Human Resources Representatives Pamela Goldsberry and Hui Yang, and Ms. Green's hotline allegations were discussed. [*Id.* at 10.] Among other complaints, Ms. Green informed the representatives that in mid-2002, while Ms. Green was attempting to hang a Lilly-issued calendar, Ms. Crist, her co-worker, approached her and stated, "[t]hat's a nigger's calendar." [*Id.*] Ms. Green also reported that in August 2006, another co-worker Eric Berger had said, "Otay Buckwheat" in Ms. Green's presence. [*Id.*] Following their investigation of Ms. Green's allegations, Ms. Goldsberry and Ms. Yang concluded that Mr. Berger and Ms. Crist had each made racially insensitive comments. [*Id.*]

In May 2007, Lilly terminated Ms. Green's employment. Its stated reason for the termination was Ms. Green's "insubordination due to her failure to comply with directives from her supervisor and the Human Resources Department to record her time and not to work overtime without pre-approval." [*Id.* at 12.]

## II.
### PROCEDURAL BACKGROUND

The operative complaint was filed on December 14, 2010.  [Dkt. 1.]  The only and operative answer was filed on February 2, 2011 with no prior motion under Federal Rule of Civil Procedure 12 having been filed.  [Dkt. 19.]  Because of the unique history of this case (a spinoff of an earlier attempted but never certified class action), the deadline to amend was June 6, 2011.  The amendment deadline had passed before the only and operative case management plan was approved on July 7, 2011.  After extensions of liability discovery and the dispositive motion deadline, Lilly moved for summary judgment on April 16, 2012.  At no time prior did Ms. Green moved to amend her Complaint, or amend the Case Management Plan ("CMP").

In her Complaint and the CMP Ms. Green alleged that Lilly engaged in race discrimination, racial harassment, and retaliation in violation of 42 U.S.C. §1981.  The specific claims asserted in the CMP are listed below with a cross reference to the paragraph of the complaint in which they were referenced:

- Lilly discriminated against her based on race in terms of pay and promotions.  [Dkt. 1 at ¶13]

- Ms. Green's supervisors used the overly subjective Lilly performance management process to deny Plaintiff the same raises and promotional opportunities afforded to similarly situated white employees. [*Id*. at ¶8.]

- Ms. Green was paid less than similarly situated white co-workers who performed similar work.  [*Id*. at ¶8.]

- Lilly assigned Ms. Green a greater workload than similarly situated white coworkers without providing any more pay for the extra work.  [*Id*. at ¶8]

- Plaintiff was also denied promotions in favor of white individuals.  [*Id*. at ¶8.]

- Lilly's supervisors groomed white employees for advancement and denied Ms. Green similar treatment.  [*Id*. at ¶12.]

- Lilly also subjected Ms. Green to a racially hostile work environment. Ms. Green complained but Defendant did not promptly address and correct the harassment. [*Id*. at ¶9.]

- Defendant terminated Plaintiff in retaliation for her complaints of race discrimination and harassment. [*Id*. at ¶9.]

On October 3, 2012, following Lilly's challenge to Ms. Green's merit increase pay claim on the grounds that it had not been given notice of that claim, the Court asked Ms. Green to file any initial disclosures, supplements, statement of special damages, or other discovery document that would establish Lilly's notice of the merit pay claim. [Dkt. 87.] Ms. Green did so on October 9, 2012, to the Court's satisfaction. [Dkt. 89.]

### III.
### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is

- 4 -

competent to testify on matters stated.  Fed. R. Civ. Pro. 56(c)(4).   Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment.  Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment.  *Id*. at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact.  *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).  And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

## IV.
### DISCUSSION

Lilly first argues that Ms. Green did not adequately plead claims for discrimination based on disparate starting pay and Lilly's failure to give her a merit pay increase for 2007.  Second, Lilly argues that even if Ms. Green did adequately plead her claims, she has not made a prima facie case of discrimination or shown that Lilly's proffered reason is pretext. Finally, Lilly argues that, even viewing the facts in a light most favorable to Ms. Green, her allegations not support a claim for hostile work environment.

### A.  Failure to Sufficiently Plead Claims

Lilly challenges several claims asserted in Ms. Green's Complaint as failing to state a claim. Ms. Green defends her Complaint on the merits, but she need not have bothered.  Lilly's assertion of the familiar standard in Federal Rules of Civil Procedure 12(b)(6) comes too late.  A motion challenging the sufficiency of a complaint "must be made before pleading if a responsive pleading is allowed."  Fed. Rule of Civ. Proc. 12(b).  So with respect to all claims, Lilly's challenge to the sufficiency of the Complaint is **DENIED**.

### B.  Analyzing § 1981 Disparate Pay Claims on Summary Judgment

Lilly argues that even if Ms. Green has adequately pled disparate pay claims based on starting salary and denial of merit increase for 2006 performance, she has not established a prima facie case of discrimination because she has not identified a sufficiently similar comparator to show that Lilly's pay decisions were discriminatory.  Additionally, Lilly argues that even if Ms. Green establishes a prima facie case, she cannot establish pretext.

Ms. Green asserts a disparate pay claim pursuant to 42 U.S.C. § 1981.  [Dkt. 1.]  To overcome Lilly's motion for summary judgment on her § 1981 claims, Ms. Green may proceed by either providing direct evidence of discrimination, *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004), or by showing indirect evidence under the burden-shifting analysis of *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  *See Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999) (holding that to analyze a § 1981 claim on summary judgment, "we employ the same framework that we use with respect to Title VII claims").  Ms. Green relies on the indirect method.

To survive summary judgment, Ms. Green must first establish a prima facie case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  Specifically, she must show that (1) she

- 6 -

was a member of a protected class, (2) that she adequately performed his employment responsi-

bilities, (3) that despite adequate performance, she suffered an adverse employment action, and

(4) that she received different treatment than similarly situated persons who were not members

of the same protected class. *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790 (7th

Cir. 2007) (citation omitted).  If Ms. Green can make that showing, the burden shifts to Lilly to

come forth with a "legitimate, non-discriminatory reason" for its actions.  *Hill v. Potter*, 625

F.3d 998, 1001 (7th Cir. 2010) (citation omitted).  If Lilly can do so, it will prevail unless Ms.

Green can come forward with evidence that the proffered non-discriminatory reason is "a pre-

text for intentional discrimination."  *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540 (7th

Cir. 2011) (citation omitted).

   The similarly-situated inquiry and the pretext inquiry "are not hermetically sealed off

from one another."  *Coleman v. Donahoe*, 667 F.3d 835, 857-58 (7th Cir. 2012).  Specifically,

in cases such as this one where the plaintiff argues that an employer's discipline has been hand-

ed out in an uneven manner, "the similarly-situated inquiry dovetails with the pretext question."

*Id.* at 858.  Under those circumstances, "comparator evidence can do 'double-duty' at both the

prima facie and pretext stages."  *Id.*

### 1. Starting Pay

   The parties do not dispute that Ms. Green is a member of a protected class and that lower

starting pay is an adverse employment action, and Ms. Green was indisputably meeting Lilly's

legitimate expectations at the time it decided to hire her.  Ms. Green offers as comparators

Heather Marshall and Lori Garshwiler, Caucasian women whose starting salaries were higher

than Ms. Green's starting salary for the same position.  [Dkt. 64 at 20.]  Ms. Green argues that

she is similarly situated to Ms. Marshall and Ms. Garshwiler because those two employees "1)

were hired under the same job title as Ms. Green; 2) performed essentially the same job duties as Ms. Green; 3) were supervised in their first years of employment by the same individual; and 4) were subject to the same performance review process as Ms. Green." [*Id*. at 21.]

During the summary judgment inquiry, the Court is "looking for comparators, not clones." *Coleman*, 667 F.3d at 846. Although Lilly points out various (and largely hypothetical) ways in which Ms. Marshall and Ms. Garshwiler may differ from Ms. Green, [dkt. 75 at 3-5], it fails to state which, if any, of those potential differences supports a legitimate, non-discriminatory reason for the difference in starting pay. Indeed, without articulating a "legitimate, non-discriminatory reason," for its actions, its motion for summary judgment on the disparate starting pay claim is doomed. *Hill*, 625 F.3d at 1001. Apparently faulting Ms. Green for not providing an explanation for Lilly's starting pay decision; Lilly mistakenly shirks the burden it bears. [*See* dkt. 75 at 4 ("[Ms.] Green presents no evidence of the basis for Lilly's starting pay decisions. None whatsoever.").] Under the burden-shifting analysis of *McDonnell Douglas*, 411 U.S. at 802, the onus falls on Lilly, not Ms. Green to provide the basis for Lilly's starting pay decisions.

While Ms. Green has met her burden by establishing a prima facie case under the indirect method of proof, Lilly has failed to articulate a legitimate, non-discriminatory reason for the difference in starting pay. Therefore, the Court denies Lilly's motion with respect to this claim.

### 2. *Merit Pay Increase for 2006 Performance*

The parties do not dispute that Ms. Green is a member of a protected class or that her failure to receive a merit pay increase for her 2006 performance is an adverse employment action. Instead, the parties dispute whether Ms. Green adequately performed her employment re-

sponsibilities in 2006 and whether she has proffered a similarly situated comparator to establish a prima facie case of discrimination based on Lilly's denial of a merit pay increase.

Although Lilly disputes that Ms. Green was adequately performing her employment responsibilities, in a case like this where the employee alleges that she received more adverse treatment than other employees who had similar employment issues, the plaintiff "does not have to show that she was meeting her employer's legitimate expectations in order to establish a prima facie case." *Flores v. Preferred Tech. Group*, 182 F.3d 512, 515 (7th Cir. 1999). Therefore, to make a prima facie case of employment discrimination, Ms. Green only must show that she received different treatment than similarly situated persons who were not members of the same protected class. *Id*.

The Seventh Circuit Court of Appeals recently emphasized that "the similarly-situated inquiry is flexible, common-sense, and factual. It asks 'essentially, are there enough common features between the individuals to allow a meaningful comparison?'" *Coleman*, 667 F.3d at 841. Although similarly situated employees must be "directly comparable to the plaintiff in all material respects," they "need not be identical in every conceivable way[,]" and the Court is "looking for comparators, not clones." *Id.* at 846 (citations omitted). As long as distinctions between the plaintiff and the proposed comparator are not "so significant that they render the comparison effectively useless," the similarly-situated requirement is satisfied. *Id.* Whether a comparator is similarly situated is usually a question for the fact-finder, and summary judgment is appropriate only when "no reasonable fact-finder could find that plaintiff [has met his] burden on the issue." *Id.* at 847.

Typically, a plaintiff must at least show that a comparator "(1) had the same supervisor; (2) was subject to the same standards; and (3) engaged in "similar conduct without such differ-

entiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (citation omitted). The Seventh Circuit cautioned, however, that these factors are "not a 'magic formula'" and that the "similarly-situated inquiry should not devolve into a mechanical, one-to-one mapping between employees." *Id.* (citation omitted). With this legal standard in mind, the Court turns to Ms. Green's proffered comparator.

Ms. Green offers Ms. O'Connor, a Caucasian, as a comparator for her claim regarding the merit pay increase for 2006 performance, stating the following:

> During the calendar year 2006, like Ms. Green, Mary O'Connor was an Administrative Assistant who supported her program team leaders through calendar support, the coordination of meetings and administrative team support. She also worked under the supervision of Ms. Susemichel at pay Grade Level 30. Following the 2006 calendar year, Ms. O'Connor received a merit pay increase from Ms. Susemichel, despite her 2006 PM document noting that Ms. O'Connor needed to watch her attention to detail (i.e. scheduling meetings on the wrong days, including the incorrect call-in number in meeting notices) and be more proactive in anticipating program team leader needs. Ms. O'Connor's PM document also glosses over the fact that her work product was only "relatively" accurate, considering the number of business partners supported. Ms. Green received no such leeway in her 2006 PM document. Although Ms. Green's PM document recognizes that she took on additional program leaders, the document says that her doing so was only consistent with the actions of the other Administrative Assistants. Furthermore, Ms. Green's alleged need to pay attention to detail resulted in an Unsatisfactory rating for the "Implement with Quality, Speed, and Value" Leadership Behavior, whereas Ms. O'Connor was rewarded with a Successful rating in that category despite her need to improve her attention to detail.

[Dkt. 64 at 26-27.]

In reply, Lilly argues that the fact "that two Administrative Assistants committed the same general category of mistake (e.g. inattention to detail) does not mean they did it equally, to the same degree, or with the same seriousness." However, to establish a prima facie case for discrimination and rebut Lilly's non-discriminatory explanation that her performance deficiencies resulted in the denial of merit pay, Ms. Green need only provide a comparator, not an exact duplicate. *Coleman*, 667 F.3d at 846. Under the common-sense standard iterated by the Seventh

Circuit in *Coleman*, the Court finds the above commonalities sufficient to permit a meaningful comparison allow the inference that intentional discrimination may be at play.  667 F.3d 846-47. Therefore, Ms. Coleman has both established a prima facie case for discrimination and rebutted Lilly's proffered legitimate, non-discriminatory explanation for their disparate pay.

Because Ms. Green has offered admissible evidence to establish a prima facie case and rebut Lilly's proffered non-discriminatory explanation,[2] Lilly is not entitled to summary judgment for her disparate pay claims under § 1981.  Accordingly, the Court denies its motion with respect to those claims.

### C.  Hostile Work Environment Claim

Finally, Lilly argues that it is entitled to summary judgment on Ms. Green's hostile work environment claim.  To survive summary judgment on a hostile work environment claim against an employer, the employee must show: "(1) [s]he was subject to unwelcome harassment; (2) the harassment was based on [her] race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability."  *Smith v. Ne. Illinois Univ.*, 388 F.3d 559, 566 (7th Cir. 2004).  In evaluating the severity and pervasiveness of the conduct, we examine "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Russell v. Bd. of Trustees of Univ. of Ill. at Chicago,* 243 F.3d 336, 343 (7th Cir. 2001).  To satisfy the "severe or pervasive" element, the em-

---

[2] In its reply, Lilly challenges the admissibility of statements by Ms. Susemichel offered by Ms. Green to demonstrate that she was meeting Lilly's legitimate expectations.  [Dkt. 75 at 8.]  As the Court did not rely on the statements in reaching its ruling, explaining earlier that Ms. Green "does not have to show that she was meeting her employer's legitimate expectations in order to establish a prima facie case," *Flores*, 182 F.3d at 515, Lilly's evidentiary objections are denied as moot.

ployee must show that the work environment was both subjectively and objectively offensive, such that "a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  *Smith*, 388 F.3d at 566.  The workplace that is actionable is one that is "hellish."  *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 977 (7th Cir. 2004).

The Court concludes that Ms. Green has failed to make a prima facie case for her hostile work environment claim because she has not shown that her work environment was both subjectively and objectively hostile. Ms. Green cites the following three incidents in support of her claim for hostile work environment:

1.  In 2002, while Ms. Green was hanging a Lilly-issued calendar, Ms. Crist approached Ms. Green and stated, "That's a nigger's calendar."

2.  In August 2006, Human Resources Representative Tim Hudson repeated the word "nigger" in downplaying the 2002 incident.

3.  In mid-to-late 2006, her co-worker Eric Berger used the term "buckwheat" as she was walking by.

[*See* dkt. 64 at 31-33.]  These allegations, even construed in a light most favorable to Ms. Green, do not approach the severity or pervasiveness necessary to support a hostile work environment claim.  Certainly, three incidents over the span of five years cannot properly be deemed "hellish."  *Wyninger Gear, Inc.*, 361 F.3d at 977.  Therefore, the Court grants summary judgment in favor of Lilly on Ms. Green's hostile work environment claim.

## IV.
### CONCLUSION

For the reasons explained herein, the Court **GRANTS IN PART AND DENIES IN PART** Lilly's motion.  [Dkt. 56.]  Trial will proceed with respect to the starting pay and 2007 for 2006 merit raise denial.

10/18/2012

_Jane Magnus-Stinson_

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Kevin W. Betz
BETZ & BLEVINS
kbetz@betzadvocates.com

Sandra L. Blevins
BETZ & ASSOCIATES
sblevins@betzadvocates.com

Ellen E. Boshkoff
FAEGRE BAKER DANIELS LLP - Indianapolis
ellen.boshkoff@faegrebd.com

Johane J. Domersant
BAKER & DANIELS, LLP
johane.domersant@bakerd.com

Benjamin C. Ellis
BETZ & BLEVINS
bellis@betzadvocates.com

Sharon Yvette Eubanks
SANFORD WITTELS & HEISLER LLP
seubanks@swhlegal.com

Brandon  Jamison
SANFORD WITTELS & HEISLER, LLP
bjamison@swhlegal.com

Jamenda A. McCoy
FAEGRE BAKER DANIELS LLP - Chicago
jamenda.mccoy@faegrebd.com

Matthew Louis Schmid
SANFORD WITTELS & HEISLER, LLP
mschmid@swhlegal.com